FILED

**NOT FOR PUBLICATION**

MAR 29 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARTHA RIVERA; et al., | No. 09-15136 |
| Plaintiffs - Appellants, | D.C. No. 1:99-cv-06443-OWW-SMS |
| v. | |
| NIBCO, INC., an Indiana corporation, | MEMORANDUM [*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted February 23, 2010
Pasadena, California

Before: REINHARDT, SILER,[**] and HAWKINS, Circuit Judges.

Appellants Rivera, et. al ("Rivera"), twenty-three Hispanic and Southeast

Asian immigrant workers, brought suit against Nibco, their former employer,

alleging that they had been terminated on the basis of their national origin in

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.
[**]    The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

violation of Title VII of the Civil Rights Act of 1964.  A jury returned a verdict in

Nibco's favor.  On appeal, Rivera contends that the district court erroneously

denied their *Batson* challenge to Nibco's use of three of its four peremptory strikes

to remove Hispanic jurors.  *See Batson v. Kentucky,* 476 U.S. 79 (1986).  Because

we conclude that, with respect to Juror "TG,"[1] the district court's denial of Rivera's

*Batson* challenge was clearly erroneous, we reverse and remand for a new trial.[2]


I.

This appeal concerns *Batson's* third step.  At this step, the district court was

obligated to "undertake a sensitive inquiry into such circumstantial and direct

evidence of intent as may [have] be[en] available" to determine whether Nibco's

---

[1]In order to protect the potential jurors' privacy, we refer to them by their
initials only.

[2]We also deny Nibco's Motion to Strike Appellant's Appendix, and grant
Appellant's request to take judicial notice of the completed juror questionnaires.
*See United States v. Torres-Ramos*, 536 F.3d 542, 560-61 (6th Cir. 2008) (taking
judicial notice of juror questionnaires).  We consider the questionnaires not for the
truth of the potential jurors' statements, but as evidence of the information that was
before Nibco when it made its peremptory strikes.  *Cf. Von Saher v. Norton Simon
Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010) (taking judicial notice of
magazine articles about paintings at issue in the case as evidence "of what
information was in the public realm at the time").

strikes were motivated by purposeful discrimination. *Batson,* 476 U.S. at 93 (internal quotation marks removed).

As an initial matter, we reject Nibco's argument that Rivera should be precluded on appeal from pointing out flaws in Nibco's proffered reasons that are apparent from the record, but that Rivera did not specifically point out below. Rivera's initial *Batson* challenge "impose[d] on the trial court an obligation to complete the third step of the *Batson* process . . . ." *United States v. Alanis*, 335 F.3d 965, 966 (9th Cir. 2003). "[T]he third step of *Batson* primarily involves the trier of fact," which "must evaluate the record and consider each explanation within the context of the trial as a whole . . . ." *Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir. 2006) (en banc); *see also id*. ("[N]either the trial courts nor we are bound to accept at face value a list of neutral reasons that are either unsupported in the record or are refuted by it.") (internal quotation marks removed). Moreover, a comparative juror analysis is required on appeal, even when, as in this case, it was

not requested or attempted below.[3]  *Id.* at 361.  We thus review the district court's ruling in light of our review of the juror questionnaires.

## II.  Juror TG

Nibco gave five reasons for striking TG.  The district court accepted three: (1) Her sister had problems with discrimination and had filed a discrimination claim (an assertion that Nibco's counsel had qualified by adding, "or not"); (2) She "loved" working with people who spoke different languages; and (3) She had filed a workers' compensation claim.  The court did not address Nibco's other two proffered reasons: that TG's sister had been fired and that TG had previously served on a jury that failed to reach a verdict.

---

[3]At oral argument, Nibco's counsel suggested in response to questioning by the court that a court's obligations in ruling on a *Batson* challenge might be different in civil and criminal cases.  This Circuit has not previously recognized such a distinction.  *See Montiel v. City of Los Angeles*, 2 F.3d 335 (9th Cir. 1993) (reversing and remanding for a new trial where district court in § 1983 action failed to conduct a proper *Batson* inquiry); *see also Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 631 (1991) (holding that the "same approach" to determining whether the proponent of a *Batson* motion has established a *prima facie* case of discrimination "applies in the civil context"); *but see Woodward v. Epps*, 580 F.3d 318, 337-38 (5th Cir. 2009) (distinguishing between courts' roles in ruling on a *Batson* motion in capital cases as compared to ordinary criminal or civil cases).  Because Nibco did not raise this argument in the district court or in its brief on appeal, and because the parties both proceeded throughout this litigation on the basis that the rules and cases applicable to criminal proceedings applied here, we decline to consider the issue at this time.

The record reveals major flaws in all three of the reasons accepted by the court.  First, Nibco's assertion that TG's sister had experienced discrimination, which the district court converted into an assertion that TG's sister had brought a discrimination claim, was completely unfounded and has no support in the record.  Second, TG never said she loved working in a multilingual environment.  Nibco conflated two unrelated statements in asserting otherwise.  Finally, a comparative juror analysis undermines Nibco's credibility regarding its concern with TG's workers' compensation claim:  Four white jurors had also filed workers' compensation claims, and Nibco neither questioned them about their claims nor used its peremptory strikes to eliminate them from the jury.  *See Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) ("If [a party's] proffered reason for striking a [Hispanic] panelist applies just as well to an otherwise-similar [non-Hispanic] who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step.").

"The proffer of various faulty reasons and only one or two otherwise adequate reasons, may undermine the prosecutor's credibility to such an extent that a court should sustain a *Batson* challenge." *Lewis v. Lewis,* 321 F.3d 824, 831 (9th Cir. 2003); *see also Snyder v. Louisiana,* 552 U.S. 472, 485 (2008) ("[The] proffer of [a] pretextual explanation naturally gives rise to an inference of discriminatory

intent."). Here, *all* of the reasons accepted by the district court either lack support in the record or are thoroughly undermined by a comparative juror analysis.

The remaining two reasons offered by Nibco, which the district court did not address – TG's jury experience and her sister's dismissal – are also seriously flawed. Three white jurors had previous jury experience, including one who said she had trouble "judging others," but Nibco did not find that to be a basis for striking, or even questioning them during voir dire. And it is implausible that TG would have been biased by her sister's dismissal: the record shows that TG believed that it was her sister's own fault, because she missed too much work.

Under these circumstances, and taking into account the fact that Nibco used its strikes disproportionately against Hispanic jurors in a case involving claims of national origin discrimination against Hispanic workers, *see United States v. Esparza-Gonzalez*, 422 F.3d 897, 905 (9th Cir. 2005) (stating that the racial element inherent in a trial is a fact "that should also be considered when evaluating whether the totality of the circumstances gives rise to an inference of discriminatory intent"), the district court's conclusion that Nibco's proffered reasons were not pretexts for discrimination was clearly erroneous.

### III.  Juror "L"

"Because just one racial strike calls for a retrial," it is not necessary to determine whether there were genuine, non-racial reasons for striking the other two jurors. *Kesser*, 465 F.3d at 369.  It is relevant, however, that Nibco's proffered reason for striking Juror L is highly questionable, "mak[ing] it even harder to believe that [its] reasons for striking [Juror TG] were race-neutral." *Id.*

Nibco's only proffered reason for striking Juror L was that he lived with his father who had been recently laid off due to a lack of work.  Nibco's counsel stated that Juror L "indicated that . . . the experience of his father getting laid off was something that bothered him and he was concerned about that."  Counsel repeated three times that Juror L lived with his father and twice stressed that the lay-off was recent.

The record confirms that Juror L's father had been laid off.  However, neither the court nor the parties asked him about the lay-off during voir dire (in fact, neither party asked him any questions at all), and there is no evidence in either the voir dire transcript or the juror questionnaires regarding how Juror L felt about it.  Nor is there any evidence that the lay-off was recent, or that Juror L lived with his father.  Nibco's lack of foundation for its assertions is troubling.  Although on its own, it would not necessarily require a finding of intentional discrimination

with respect to Juror L, it further undermines Nibco's credibility with respect to its reasons for striking Juror TG.[4]

### IV.

Nibco's stated reasons for striking juror TG were implausible, unsupported by the record, and/or undermined by a comparative juror analysis.  Accordingly, the district court erred in finding that they were not pretext for intentional discrimination.  We therefore REVERSE and REMAND for a new trial.

REVERSED and REMANDED.

---

[4] Nibco's proffered reason for striking the third Hispanic potential juror, RG, was similarly problematic.  Nibco asserted that RG's mother had been involved in a discrimination suit against her former employer.  However, the record reveals that RG's mother had experienced discrimination at work and then "just moved on."  As with Juror L, this inconsistency may not so undermine Nibco's credibility with respect to its reasons for striking Juror RG that it compels a finding of intentional discrimination with respect to her, but it provides further evidence of intentional discrimination with respect to Juror TG. *See Kesser*, 465 F.3d at 368-69.